**GOVERNMENT EMPLOYEES INS. CO., Inc., v. POWELL et al.**

**Civil Action No. 1649.**

District Court, D. Connecticut. Hartford Division.

July 17, 1946.

J. Stephen Knight, Gumbart, Corbin, Tyler & Cooper, and Morris Tyler, all of New Haven, Conn., for plaintiff.

John F. McGowan, Adrian W. Maher, and Richard L. Weldon, all of Bridgeport, Conn., for respondents.

SMITH, District Judge.

The plaintiff insurance company seeks to void a policy of automobile liability insurance on the ground of fraudulent misrepresentations and concealment of material facts. The company had insured the car of an Army field artillery lieutenant. He left the car with his brother when he went overseas and authorized his brother to use it and to renew the liability insurance. In renewing the insurance, the brother signed the application, a letter accompanying the application, and a later letter with reference to the brother's driving record, in the name of the lieutenant. It is the claim of the company, advanced after a loss had occurred, that the signing of the application and the letters in the name of the lieutenant by the brother amounted to a fraudulent misrepresentation that the lieutenant was still in this country and in general charge of the car. It is claimed that these were representations material to the risk and their falsity gives the company the right to void the policy.

If misrepresentations were made, and the facts misrepresented were material to the risk, the policy is voidable, for the brother, in signing the application and letters, was acting as the agent of the lieutenant in obtaining the insurance policy. However, under all the circumstances in this case, I question whether there is any misrepresentation of fact. Ordinarily, the signing of the name of the lieutenant by another might be a representation that the lieutenant was present and signed it himself. The company, however, knew that the lieutenant was an officer in the field artillery in time of war. It specialized in writing insurance for government employees including service personnel and wrote policies on many other officers. It knew that a very high percentage of field artillery officers at the time were overseas or would shortly go overseas. It must be held to have expected that applications and letters might be signed by agents or attorneys in fact of members of the armed forces without disclosing the fact that the agent rather than the principal had signed the applicant's name. Moreover, in the letter which the lieutenant sent to the company originally informing it of the transfer of the car to Bridgeport, there was nothing to indicate that he intended to remain there; it merely stated that the car was to be used there (which it was) and requested that future correspondence be sent to a Bridgeport address, an address which,

from all appearances and under the circumstances, might well have been a permanent forwarding address—it was apparently his legal address. It may also be noted that the company had other signatures of the principal in this case in its file on the case which was continued from the prior year under the same number, and the mere manner of signing would put anyone as familiar with military practice as this company upon notice that these signatures were not those of an Army officer.

Even if there was some misrepresentation, however, the company has failed to establish that it concerned a material fact. To be sure, two of its underwriters testified, probably in good conscience, that the renewal policy would not have been written had the company known that the car would be in the custody of the brother rather than the lieutenant. Such testimony has an inescapable morning-after odor; it is understandably easy for the underwriters to believe, now that there has been a loss, that they would have avoided such a risk. Certain salient facts cast considerable doubt upon whether the company actually considered custody important. Special emphasis is placed by the application and policy upon the ownership and the place of principal use of the car (which information was accurately supplied). Nowhere is there any mention of custody. On the contrary, there is a statement in the policy that the "insured" includes "any person while using the automobile ' * * * provided the actual use of the automobile is with the permission of the Named Insured." No exception is made in the case of a general blanket permission as distinguished from specific permission for each instance of use. No question was asked in the application, policy, or correspondence as to who was to have control of the car.

■ In the absence of fraud, a failure of an insured to disclose a fact as to which no questions are asked is not such a concealment as will avoid a policy. 45 C.J.S., Insurance, § 473, page 155 and cases cited in note 81.

▪ ■ The failure to ask about the general control of the car by the insured in this case is quite convincing that the knowledge of it would not have influenced the judgment of plaintiff's underwriters in passing upon the risk; particularly in view of plaintiff's familiarity with the probability of changes in general control of cars by their insureds who were officers of the armed forces in the climactic year of the late war.

■ It is also worthy of note that even after the company had learned of the actual facts, it did not attempt to cancel the policy but allowed it to run on to its expiration. While not a waiver or estoppel as to this accident, such knowledge having been acquired thereafter, it is certainly significant that the company was willing to continue the risk.

The principal bases on which the underwriters of the plaintiff, after the loss, place their opinion that information on general control of the car was material to the risk were items of information already obtained by them through the application and later correspondence. See testimony of Kraus, R. p. 115. The additional information they might have obtained by notice from either Powell that the lieutenant had left for overseas would not have altered their judgment as to the risk, and failure to provide it is not ground for forfeiture of rights under the policy.

There is little, if any, precedent for the claim of the plaintiff herein that the information not furnished by the insured was material to the risk. A somewhat similar set of facts existed in Century Indemnity Co. v. Shergold, 2 Cir., 1943, 135 F.2d 568, where the undisclosed agent signed the application in the name of the insured, who was at·sea for long periods, but the claim of misrepresentation was as to actual ownership, not, as here, control of the car.

For the company, familiar as it was with the situation of so many of its insureds, to be allowed to sit back and make no inquiry and no requirement of information, by the terms of its application or otherwise, as to the movement overseas of its policyholders and the disposition of their cars during the absence of the policyholders, and then to hold failure to provide the information the company now claims was

material ground for avoiding the policies, in spite of the company's knowledge of the conditions then existing, would be to permit it to lay a trap for its policyholders in the armed services in time of war.

The plaintiff seeks to have us draw an inference of fraudulent intent to conceal the absence of Lieutenant Albert Powell, and the resultant complete control of the car by August Powell, from the fact of August's writing letters in the third person referring to his own driving record and from his signing the letters and the application in Albert's name. This is a possible inference. However, there are at least two others which can be drawn from the facts here; one, that August wrote of himself in the third person because he thought it more probable that the company would believe the statement concerning him if made by someone other than himself; or that August felt that the proper method of acting for Albert as his agent was to answer letters addressed to him as though Albert himself were answering and to sign letters and application in Albert's name without disclosing that it was done by an agent. All three are possible explanations but the third, innocent explanation seems slightly more probable than the other two, particularly in view of the impression made by August on the stand and the fact that the application and letters truthfully set forth the facts about August's record of conviction and license suspension as well as the facts concerning the extent and purpose of his use of the car. A conscious purpose to deceive would probably have been manifested in the content of the statements made by him if it had also existed in his writing in the third person.

The company having been correctly informed as to the exact extent of the use of the car by the brother, the principal place of use, and the ownership, and the renewal application having been signed by the duly authorized agent of the Named Insured, I can find no misrepresentation of a material fact. Therefore I must hold the policy to have been valid and in force and effect at the time of the accident in question.

Judgment will be entered for the defendants.